OPINION *Page 2 
{¶ 1} Appellant Habeeb J. Matta seeks in this appeal to overturn summary judgment granted to his insurer, Appellee Progressive Max Insurance Company (hereinafter "Progressive") in a dispute over liability coverage for an accident he caused. Appellant was employed by ACME Steak and Seafood Co. in Youngstown, and the accident occurred while he was returning from a delivery. He attempted to obtain insurance benefits from his personal automobile insurance policy, but Progressive denied coverage and filed a declaratory judgment action over the coverage issue. Progressive sought summary judgment, arguing that the policy excluded liability coverage if the vehicle was being used to carry persons or property for a fee. Appellant, in rebuttal, argued that the "for a fee" exclusion was ambiguous and that he was not carrying any cargo when the accident happened. Thus, he was not making a delivery. Based on the holding of U.S. Fid. Guar. Co. v. Lightning Rod Mut. Ins.Co. (1997), 80 Ohio St.3d 584, 687 N.E.2d 717, the "for a fee" exclusion is ambiguous and should be interpreted in favor of the insured. The mere fact that Appellant was paid an hourly wage by Acme Steak does not trigger the "for a fee" exclusion in light of U.S. Fid. Guar. Co.
Because this record does not reflect that the "for a fee" exclusion applies to this case, the trial court should not have granted summary judgment to Progressive. The judgment is hereby reversed.
 SUMMARY OF THE CASE {¶ 2} In 2003, Appellant was a delivery driver for Acme Steak. He had been so employed for 25 years. Appellant is paid by the hour by Acme Steak. On February 14, 2003, he was driving a company minivan, delivering some paper *Page 3 
products. While returning from this delivery, he drove the minivan into the back of a car driven by Cari Tetlow, who was stopped in traffic. There was no cargo in the minivan at the time of the accident.
 {¶ 3} Appellant was the named insured on a personal automobile insurance policy issued by Progressive. The policy provided liability coverage of $100,000 per person and $300,000 per accident. The liability section of the policy contained an exclusion of coverage arising from a vehicle being used to carry persons or property "for compensation or a fee."
 {¶ 4} On March 22, 2005, Progressive filed a declaratory judgment action in the Mahoning County Court of Common Pleas. Progressive asserted that it did not owe Appellant any duty to defend or indemnify based on the "for compensation or a fee" exclusion in the auto insurance policy.
 {¶ 5} On July 31, 2006, Progressive filed a motion for summary judgment. Attached to the motion was a deposition taken of Appellant on May 23, 2006. Appellant filed a response to the motion for summary judgment on August 2, 2006. The trial court ruled on the motion on January 17, 2007, granting summary judgment to Progressive. This timely appeal followed.
 ASSIGNMENT OF ERROR {¶ 6} "The trial court erred when it granted Progressive Max's motion for summary judgment."
 {¶ 7} This is an appeal of an order granting summary judgment to an insurance company regarding basic coverage issues. An appellate court conducts a *Page 3 
de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. When a court considers a motion for summary judgment the facts must be taken in the light most favorable to the non-moving party. Id.
 {¶ 8} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim." (Emphasis in original.) Dresher v. Burt (1996),75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293, 662 N.E.2d 264. In other words, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. Brewer v. Cleveland Bd. ofEdn. (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023.
 {¶ 9} Underlying the coverage issue, this case also involves the interpretation of the terms of an insurance contract. If the terms of the contract are determined to *Page 4 
be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. State ex rel. Parsons v.Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377; Long BeachAssn. v. Jones (1998), 82 Ohio St.3d 574, 576, 697 N.E.2d 208. A contract is ambiguous if its terms cannot be clearly determined from a reading of the entire contract or if its terms are susceptible to more than one reasonable interpretation. United States Fid. Guar. Co. v.St. Elizabeth Med. Ctr. (1998), 129 Ohio App.3d 45, 55, 716 N.E.2d 1201. Common words in a written contract will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clearly evidenced from the face or overall content of the contract.McConnell v. Hunt Sports Ent. (1999), 132 Ohio App.3d 657, 675,725 N.E.2d 1193.
 {¶ 10} It is well-settled law in Ohio that, "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.
 {¶ 11} Clauses in an insurance contract that purport to exclude certain types of coverage must do so clearly and unambiguously.Moorman v. Prudential Ins. Co. (1983), 4 Ohio St.3d 20, 22, 4 OBR 17,445 N.E.2d 1122.
 {¶ 12} In the instant case, the contract provision in dispute reads as follows:
 {¶ 13} "Coverage under this Part 1, including our duty to defend, does not apply to: *Page 5 
 {¶ 14} "1. Bodily injury or property damage arising out of the ownership, maintenance, or use of a vehicle while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared expense car pools[.]"
 {¶ 15} Appellant contends that this policy exclusion is ambiguous and that when the ambiguity is read in his favor, it is inapplicable to the facts of this case and does not prevent him from being eligible for liability coverage. Appellant relies primarily on the holding and analysis of U.S. Fid. Guar. Co. v. Lightning Rod Mut. Ins. Co. (1997),80 Ohio St.3d 584, 687 N.E.2d 717. In that case, a pizza delivery driver, Ina Spurlock, requested liability benefits from her personal automobile insurance policy after she collided with a motorcycle and injured the driver. Although Spurlock worked for Dominos Pizza, she was driving her own car at the time of the accident. Her personal insurance carrier was Lightning Rod Mutual Insurance Company ("Lightning Rod"), and her personal policy contained an exclusion if she was carrying property "for a fee." Lightning Rod denied coverage, and so Spurlock tried to obtain coverage through a business policy issued to Dominos Pizza by United States Fidelity and Guaranty Company ("U.S. Fid.").
 {¶ 16} Instead of simply providing coverage, U.S. Fid. decided to defend Spurlock in her claim against Lightning Rod. At issue was the exclusion in the Lightning Rod policy for the insured's, "liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. * * *Page 6 
* " Id. at 584. The trial court ruled that this language was ambiguous, relying on a factually similar case out of the Tenth District Court of Appeals, Colonial Ins. Co. of California v. Jermann (1995),102 Ohio App.3d 384, 657 N.E.2d 336. The trial court determined that the ambiguity, when read in the insured's favor, rendered the exclusion inapplicable, and the court granted summary judgment to U.S. Fid. The judgment was reversed on appeal by the Fourth District Court of Appeals, and the case was accepted by the Ohio Supreme Court because it was in conflict with Jermann.
 {¶ 17} The Ohio Supreme Court ruled that the "for a fee" language was ambiguous because it could be read in two very different ways: "as excluding from coverage use of a vehicle to transport property when there is any kind of payment to the insured, and second, as excluding coverage only when a fee is paid specifically for the particular act of transporting property. Under the first reading, Spurlock's use of her car to deliver pizza would be excluded from coverage because Domino's was paying her an hourly wage. Under the second reading, however, this use would not be excluded by the Lightning Rod policy, since neither Domino's nor its customers paid Spurlock a fee specifically for delivering the pizza." (Emphasis in original.) Id. at 585.
 {¶ 18} The court read the ambiguity in favor of the insured, and concluded that no fee was paid specifically for the act of delivering pizza, even though Spurlock was paid an hourly wage to deliver pizzas. The opinion does not cite the specific facts supporting the conclusion that no particular fee was paid for delivery services, but the *Page 7 
appellate opinion explains the factual circumstances of the case in great detail. The parties had stipulated that: "(1) Spurlock was delivering pizzas for her employer at the time of the accident; (2) Spurlock was paid a $4.75 hourly rate for delivery and other duties; (3) when Spurlock used her own vehicle for delivering pizzas she was reimbursed $.18 per mile to cover gasoline and wear and tear on the vehicle; and (4) Spurlock received no separate fee for delivering pizzas." U.S. Fid. Guar. Co. v. Lightning Rod Mut. Ins. Co. (Aug. 8, 1996), 4th Dist. Nos. 95 CA 27, 95 CA 29. Under this set of facts, the "for a fee" exclusion did not apply under the driver's personal insurance policy.
 {¶ 19} The facts of the Jermann case, cited in U.S. Fid. Guar.Co., are also instructive. Jermann also involved a pizza delivery driver. In Jermann, the insured had other duties besides delivering pizza, and was not paid any fee that was solely attributable to delivering pizzas. Although the driver received a commission for each pizza delivery, the commission was for general reimbursement for gas and mileage for the car and not specifically for delivering each pizza. The wages that were paid did not depend on any particular delivery and would be paid with or without any deliveries being made. Just as in U.S. Fid. Guar. Co., the "for a fee" exclusion was interpreted as applying only when some type of fee or compensation was paid exclusively for making each specific delivery, and since no such fee could be identified, the exclusion did not apply.
 {¶ 20} U.S. Fid. Guar. Co. discussed some of the problems that would arise if the "for a fee" exclusion were interpreted against the insured and in favor of the *Page 8 
insurer. The Supreme Court explained that the insurer's interpretation was so broad that any act of transporting any item in the vehicle during work hours would trigger the exclusion. Id. at 586. The Supreme Court also reasoned that the exclusion would be triggered for noncommercial reasons, because "[i]Incidental transport of items by an insured while `on the clock' for an employer" was included in the insurer's interpretation of the "for a fee" language. Id.
 {¶ 21} The facts of this instant case fall within the reasoning and holding of U.S. Fid. Guar. Co. The record indicates that Appellant's primary job function was to be a deliveryman, but there are also indications that he may have had other duties as well. (Tr., p. 11.) There is some evidence that, in addition to making deliveries, he did odd jobs for one of the owners of Acme Steak. Furthermore, just as inU.S. Fid. Guar. Co., Appellant was paid a regular hourly wage, and there are no indications that his pay was strictly tied to each delivery he made or did not make. His pay did not vary with reference to each delivery he made. See, e.g., Progressive Ins. Co. v. Heritage Ins.Co. (1996), 113 Ohio App.3d 781, 785, 682 N.E.2d 33. Also, if Appellant performed just one duty beyond those as simply that of being a deliveryman, it would mean that he was not paid exclusively for delivering cargo. As the record now stands, there is no evidence to indicate that Appellant was paid a specific fee for this particular delivery as is required in order to apply this exclusion by law. The record indicates rather clearly that Appellant did not fall within the "for a fee" exclusion as interpreted by U.S. Fid. Guar. Co., and that it was inappropriate to grant summary judgment to Progressive. *Page 9 
 {¶ 22} Progressive argues that the exclusionary language in its policy is different from that in U.S. Fid. Guar. Co. In the instant case, the policy excluded coverage when the vehicle was carrying persons or property "for compensation or a fee," whereas in U.S. Fid. Guar.Co., the policy only excluded coverage for deliveries made "for a fee." We can see no real difference between the two different phrases. Whether it is called "compensation" or is called a "fee," the Supreme Court has instructed that the exclusion is not triggered unless the insured is being paid exclusively and specifically for carrying or delivering persons or property. Furthermore, the term "compensation" was part of the definition of "fee" that was used in U.S. Fid. Guar. Co.: "A `fee' is defined as `[a] recompense for an official or professional service or a charge or emolument or compensation for a particular act or service. A fixed charge or perquisite charged as recompense for labor; reward, compensation, or wage given to a person for performance of services or something done or to be done.' Black's Law Dictionary (6 Ed. 1990) 614; see, also, Webster's Third New International Dictionary (1986) 833[.]"U.S. Fid. Guar. Co., supra, 80 Ohio St.3d at 585, 687 N.E.2d 717.
 {¶ 23} Progressive also cites our decision in Shuback v. State AutoMut. Ins. Co. (Dec. 6, 1999), 7th Dist. No. 97-CA-176, as support. That case, though, involved the question as to whether the insured was, "employed or otherwise engaged in the `business' of," delivering cars to car auctions. Id. at 1. The liability coverage exclusion under review inShuback was very narrowly focused on whether the insured was employed or in the business of selling, repairing, servicing, storing, *Page 10 
parking, delivering and road testing vehicles used on public highways. The case did not involve the "for a fee" exclusion under review in the instant appeal.
 {¶ 24} Progressive points out that Appellant was not driving his own vehicle, as occurred in U.S. Fid. Guar. Co. and Jermann. Instead, he was in a company minivan at the time of the accident. The minivan in this case was actually the personal automobile of one of the owners of Acme Steak, but it is not clear how this is relevant. The Progressive policy covered "the insured" not only while he was in a "covered vehicle" listed in the policy, but also for bodily injury or property damage, "for which an insured person becomes legally responsible because of an accident arising out of the ownership, maintenance, or use ofa vehicle." (Emphasis added.) (Progressive policy, p. 5.) We note that under Progressive's analysis, the "for a fee" exclusion would apply even if Appellant had been using his own vehicle at the time of the accident. Using Progressive's reasoning, if Appellant had been in his own vehicle during work hours, he would still be classified as a delivery driver who was paid an hourly wage or fee. Just as in U.S. Fid. Guar. Co., the ambiguous language of the insurance policy does not distinguish between deliveries using a company vehicle or a non-company vehicle.
 {¶ 25} The parties disagree as to whether Appellant was actually making a delivery at the time of the accident because he was returning from a delivery and there was no actual cargo in the vehicle when the accident occurred. If Appellant was not actually engaged in a delivery at the time of the accident, it appears that the "for a fee" exclusion would be irrelevant, because by its own terms the exclusion *Page 11 
applies only if Appellant was engaged in the, "delivery of magazines, newspapers, food, or any other products." Progressive, though, would have us interpret the undefined term "delivery" very broadly, as encompassing all of Appellant's duties as a delivery driver, including his return trips to the workplace. While this language, if ambiguous, must be construed in Appellant's favor, the answer to this question does not change the outcome of this appeal. In reviewing this matter, we base our Opinion on the assumption that Appellant was still engaged in a delivery at the time of the accident. Even based on that assumption, the "for a fee" exclusion does not appear to be triggered in this case pursuant to law.
 {¶ 26} Appellant cites numerous other cases with facts similar to those in U.S. Fid. Guar. Co. that also held the "for a fee" exclusion was ambiguous and not applicable. See Nationwide Ins. Co. v.Johnson (1992), 84 Ohio App.3d 106, 616 N.E.2d 525; Progressive Ins. Co.v. Heritage Ins. Co. (1996), 113 Ohio App.3d 781, 682 N.E.2d 33;Progressive Specialty Ins. Co. v. Edwards (1998), 126 Ohio App.3d 171,709 N.E.2d 1231; Nationwide Ins. Co. v. Thorley (Jan. 16, 1991), 9th Dist. No. 14658.
 {¶ 27} Appellant's argument has merit, and the trial court should not have granted summary judgment to Progressive. Unless evidence exists showing that Appellant was paid a separate fee or compensation for this particular delivery, the exclusion does not apply. The judgment of the trial court is reversed. As the record does not indicate that Appellant filed a competing motion for summary judgment, the case must be remanded to the trial court for further proceedings. *Page 12 
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1