OPINION
Plaintiffs-appellants appeal the trial court's decision to grant summary judgment to defendants-appellees, West American Insurance Company ("West American") and State Farm Mutual Automobile Insurance Company ("State Farm") on a claim for underinsured motorist ("UIM") benefits.
On July 1, 1998, Charles Heimsch ("Heimsch") lost control of his automobile and went off the roadway. Heimsch's automobile struck and killed Melissa Mejia as she was riding her bicycle on the berm. The survivors of Melissa Mejia, her parents, Kathryn and Calixto, her two brothers, Matthew and Michael, and her sister, Andrea, are the appellants in this appeal. Appellants filed a complaint against West American, State Farm, Progressive Preferred Insurance Company ("Progressive"), and Heimsch. The complaint sought wrongful death, survivorship, property and punitive damages against Heimsch and UIM benefits from Progressive, West American, and State Farm.
Appellants reached a settlement with Heimsch and he was dismissed with prejudice on December 22, 1999. Appellants reached a settlement with Progressive, Heimsch's insurer. Progressive was dismissed with prejudice on May 30, 2000. West American, State Farm and appellants all moved for summary judgment on the issue of whether appellants were entitled to collect underinsured motorist benefits under the State Farm and West American insurance policies. Andrea Mejia had a policy with State Farm which provided UIM coverage in the amount of $50,000 per person/$100,000 per accident. The remainder of appellants were insured under the West American policy which also had UIM limits of $50,000 per person/$100,000 per accident.
The trial court determined that appellants were not entitled to UIM benefits under the terms of the policies and granted summary judgment in favor of State Farm and West American. Appellants appeal the trial court's decision and raise two assignments of error. In their first assignment of error, appellants contend that the trial court erred in the manner in which it calculated the set-off for amounts paid to appellants by third parties. In their second assignment of error, appellants contend that the trial court erred in applying California law instead of Ohio law to determine what coverage was available under the State Farm policy. Each assignment of error will be discussed individually.
Choice of Law: Andrea Mejia's State Farm Policy
We begin with the issue of whether appellant Andrea Mejia ("Andrea") is entitled to UIM benefits under a policy she has with State Farm. The trial court found that California law applied to the issue of whether Andrea was entitled to UIM benefits under the State Farm policy. The parties agree that if California law applies, Andrea is not entitled to UIM benefits.
Andrea lives in the State of California and the State Farm policy was issued in California. The State Farm agent who issued the policy was registered in the State of California and the vehicle insured by the policy was registered in California. Appellants contend that Ohio law should apply to this issue because the choice of law provisions applicable to torts should apply since the claim ultimately arises in tort. Appellees contend that the choice of law for contracts should apply because the insurance policy is a contract between the parties.
After the parties briefed this case and after oral arguments were heard, the Supreme Court of Ohio addressed this exact issue. The court held that "[a]n action by an insured against his or her insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract, rather than tort, even though it is tortious conduct that triggers applicable contractual provisions." Ohayon v.Safeco Ins. Co. of Illinois (2001), 91 Ohio St.3d 474, paragraph one of the syllabus. Under the contract choice of law factors, to make a determination with respect to which state's law applies, courts should determine which state has "the most significant relationship to the transaction and the parties." Id. at 477. To assist in this determination, the court should consider "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." Id. In Ohayon, the court found that although the accident occurred in Pennsylvania, Ohio law applied because the contract was executed and delivered in Ohio by Ohio residents and an Ohio licensed insurance agent, and the policy insured vehicles garaged in Ohio. Id. at 483.
In the case at bar, the State Farm contract was negotiated in California between a California resident and a California licensed insurance agent. The insured vehicle was licensed in California. Accordingly, California law should apply to the determination of UIM benefits. California allows an insurer to limit damages for bodily injury to injuries that occur to the insured. See Calif. Insurance Code Section11580.2(a)(2). In this case, the injured party, Melissa, was not an insured under Andrea's policy. Thus, Andrea is not entitled to UIM benefits under the State Farm policy.
Appellants also argue that the State Farm policy is ambiguous regarding what law should be used to determine coverage issues and that the ambiguity should be construed in favor of coverage. As support for this argument, appellants cite Csulik v. Nationwide Mut. Ins. Co. (2000),88 Ohio St.3d 17. In Csulik, the Ohio Supreme Court found the language of an insurance contract in which the insurer agreed to pay compensatory damages "due by law" to the insured, was ambiguous. Appellants argue that the State Farm policy contains similar language in a provision that states "[w]e will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." Appellants argue that the phrase "legally entitled to collect" is ambiguous.
Again, this issue was addressed by the court in Ohayon. The insurance policy in that case provided that the insurer would pay UIM benefits which an insured was "legally entitled to recover." Although the plaintiffs argued that the phrase was ambiguous, the court stated that it had previously found the phrase "legally entitled to recover" meant that the insured must be able to prove the elements of his or her claim against the tortfeasor. Id. at 484; Kurent v. Farmers Ins. Of Columbus (1990),62 Ohio St.3d 242, 245. The court found the plaintiff's reliance onCsulik was misplaced and that Csulik did not replace the court's traditional contract choice of law principles. Id. at 484.
The language in the instant case is strikingly similar to the language of the contract in Ohayon. We find no discernable difference between "legally entitled to recover" and "legally entitled to collect" as it relates to the insurance contract at issue. Accordingly, we find appellant Andrea Mejia is not entitled to UIM benefits under the State Farm policy. Appellants' second assignment of error is overruled.
Amount of Set-Off: West American Policy
Appellants argue that the trial court erred in the method of calculating the set-off for amounts paid to appellants by third parties. Heimsch was insured by Progressive with policy limits of $100,000 per person and up to $300,000 per occurrence. Progressive paid the $100,000 per person limit to appellants in settlement of the claim. Heimsch personally contributed an additional $25,000 in settlement of his individual claim. After attorney's fees and expenses were deducted from the $125,000 settlement, the remainder was divided equally among the five survivors. Individually, each survivor received $15,988.89 out of the proceeds of the settlement.
Appellants agree that pursuant to R.C. 3937.18(A)(2), as amended by S.B. 20, and the language of the applicable policies, appellees are entitled to a set-off of the amounts paid by the tortfeasor from the amount of the UIM coverage. However, the parties disagree on how that set-off should be calculated. The dispute centers on the correct interpretation of the language "amount available for payment" in R.C.3937.18(A)(2). Appellants argue that the phrase means the amounts actually received by the injured parties. The trial court determined that, pursuant to a previous decision by this court, the phrase means the total amount of the tortfeasor's liability limits. The trial court found that the set-off should be calculated in a strict policy-limit to policy-limit comparison. The West American policy provided coverage limits in the amount of $50,000/$100,000. The trial court found that because the $50,000 per person limit was less than the amount of the tortfeasor's $100,000 policy limits, appellants were not entitled to receive UIM benefits under the West American policy.
However, the case relied on by the trial court has recently been reversed by the Ohio Supreme Court. Littrell v. Wigglesworth (Mar. 13, 2000), Butler App. Nos. CA99-05-092, CA99-08-141, unreported, reversed (2001), 91 Ohio St.3d 425. The Ohio Supreme Court determined that the amount of set-off should be determined by the amounts actually received by the injured parties, not by a policy-limit to policy-limit comparison. Littrell v. Wigglesworth, (2001), 91 Ohio St.3d 425, 430.
Although appellants argue that this court should separately set-off the amount each individual appellant received from the $50,000 UIM limit of the policies, the Ohio Supreme Court has recently discussed the method of set-off calculation in cases where the insurance policy limits recovery to a single per-person limit. In Clark v. Scarpelli (2001),91 Ohio St.3d 271, the court noted that R.C. 3937.18 "permits automobile liability insurers to include provisions in their insurance policies that consolidate all individual wrongful death claims arising out of any one person's bodily injury into a single claim and thereby limit all wrongful death damages to a single per-person policy limit." The consolidation language must affirmatively appear in the policy, i.e., insurers must include language within their policies of insurance that clearly and unambiguously consolidates such claims in order to give effect to such a limit." Id., relying on United States Fid. Guar. Co. v. Lightening RodMut. Ins. Co. (1997), 80 Ohio St.3d 584, 586.
In Clark, four wrongful death beneficiaries attempted to recover UIM benefits from their insurance company. The policy limited all wrongful death claims to the single per-person limit of $100,000. Id. at 284. Because of this consolidation language, all claims for wrongful death were included in the single per-person policy limit. Id. Thus, the amount available to all the wrongful death beneficiaries combined was $100,000. Because the combined total amount the wrongful death beneficiaries received from the tortfeasor was also $100,000, the beneficiaries were not entitled to receive UIM benefits under their policy.
The instant case presents the same scenario. Appellants argue that the amount each person received should be separately set-off from the $50,000 policy limit, so that each person is entitled to receive the difference between the $50,000 limit and the $15,988.89 received by that person from the tortfeasor.[1] However, the policy at issue in this case contains limiting language similar to the policy in Clark. The West American policy limits liability for payment of UIM benefits in the following paragraph:
 The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is out maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:
1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
This provision limits UIM recovery for an accident in which only one person is injured or dies to the "per person" limitation for all injuries, regardless of the number of insureds who make claims under the policy. Thus, in this case, appellants collectively are limited to the $50,000 per person limit under the West American policy as the maximum payable under UIM coverage. Because collectively appellants have received an amount greater than $50,000 from the tortfeasor, they are not entitled to UIM benefits under the West American policy. See Clark at 284. Appellants' first assignment of error is overruled.
In conclusion, we find that appellant Andrea Mejia is not entitled to UIM coverage under the State Farm policy because California law applies to the policy. We also find that appellants are correct in their argument that the set-off in the West American policy is to be calculated by a comparison of the amounts actually received from the tortfeasor, not a policy-limit to policy-limit comparison. However, because the West American policy contains language limiting the total of appellants' recovery to the per-person limitation and the total amount received by appellants is greater than the per-person limit, appellants are not entitled to UIM benefits under the West American policy.
Judgment affirmed.
VALEN and POWELL, JJ., concur.
[1] We note that while appellants argue the net amount received from the tortfeasor should be used to calculate the set-off, the Ohio Supreme Court recently held that the "amounts available for payment" language in R.C. 3937.18(A)(2) includes costs and attorneys' fees. Littrell at 434. Such amounts are an expense of the insured and should not act to increase underinsured motorist benefits. Id. Thus, for purposes of calculating the amount of an individual set-off, the $125,000 recovered would be divided equally among the five beneficiaries.